## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN CALDERAIO | : | CIVIL ACTION NO. 2:23-cv- 04218 |
| Plaintiff, | : | |
| v. | : | JURY TRIAL DEMANDED |
| CENTRAL BUCKS SCHOOL DISTRICT | : | |
| Defendant. | : | |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2025, upon consideration of the

Motion for Summary Judgment of Central Bucks School District, and any response thereto, it is

hereby **ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED**. Any and all

claims asserted against Defendant are dismissed with prejudice.

## **SO ORDERED:**


_____
J.

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| JOHN CALDERAIO | : | CIVIL ACTION NO. 2:23-cv- 04218 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| CENTRAL BUCKS SCHOOL DISTRICT | : | |
| | : | |
| Defendant. | : | |
| | : | |

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, Central Bucks School District, by and through their undersigned counsel, hereby file this Motion for Summary Judgment and to Dismiss Plaintiffs' Complaint with prejudice pursuant to Fed.R.Civ.P. 56.

For the reasons asserted in the accompanying Memorandum of Law, the Defendant respectfully requests that this Honorable Court dismiss any and all claims asserted against them with prejudice.

Respectfully Submitted,

**MARSHALL DENNEHEY, P.C.**

By: _____

Joseph J. Santarone, Jr., Esquire
2000 Market Street, Suite 2300
Philadelphia, PA 19103
(215) 575-2626
Attorney ID Nos.: 45723
jjsantarone@mdwcg.com

/s/ Ashley L. Toth

Ashley L. Toth, Esquire
2000 Market Street, Suite 2300
Philadelphia, PA  19103
(856) 414-6400
Attorney ID Nos.:  307416
altoth@mdwcg.com

Attorneys for Defendant,
Central Bucks School District

**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| JOHN CALDERAIO | : | CIVIL ACTION NO. 2:23-cv- 04218 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| CENTRAL BUCKS SCHOOL DISTRICT | : | |
| | : | |
| Defendant. | : | |
| | : | |

<u>**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**</u>

On the brief: Ashley L. Toth, Esq.

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................ 1

II.    STATEMENT OF MATERIAL FACTS .......................................................... 5

III.   LEGAL ARGUMENT ..................................................................................... 5

   A.   Standard of Review ............................................................................... 5

   B.   (Count I)- Civil Rights Violation Under 42 U.S.C. §1983 ................... 7

   C.   (Count II)- Violation of Title IX ........................................................ 12

   D.   (Count III) Negligent Retention, Transfer, Supervision .................... 20

      1.   The Ninth Exception Is Not Triggered, Because Plaintiff Has Failed to Establish "Indecent Contact" for Institutional Sexual Assault Has Occurred ............................ 21

      2.   Plaintiff Cannot Establish That The District Negligently Hired or Supervised Ohrt ………………………………………………………………………………24

   V.   CONCLUSION ................................................................................... 25

# TABLE OF AUTHORITIES

Cases

American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) .................................................................................................................................... 7

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ............................................................ 6

Beck v. City of Pittsburgh, 89 F.3d 966, 972 (3d Cir. 1996) .......................................................... 8

Belmont v. MB Inc. Partners, Inc., 708 F.3d 470, 477-78 (3d Cir. 2013) .................................... 24

Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1362-63 (3d Cir. 1992) ........... 6

Black by Black v. Indiana Area School District, 985 F.2d 707, 712 (3d Cir.1993) ...................... 8

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) ................................................................... 6

Chancellor v. Pottsgrove School Dist., 501 F.Supp.2d 695, 704 (E.D.Pa.2007)........................ 13

Commonwealth v. Gamby, 238 A.3d 298, 310 (Pa. 2022)............................................................ 22

Davis v. Monroe County Board of Education, 526 U.S. 629 (1999) ............................................ 13

Dempsy v. Walso Bureau, Inc., 246 A.2d 418, 420 (Pa. 1968) ................................................... 24

Doe C.D. v. Career Tech. Centerof Lackawanna Cnty., No. CV 3:20-0088, 2020 WL 1165837, at *18 (M.D. Pa. Mar. 11, 2020) .................................................................................................. 8

Doe v. Boyertown Area Sch. Dist., 10 F. Supp. 3d 637, 650 (E.D. Pa. 2014) .............................. 8

Doe v. Dallas Ind. Sch. Dist., 153 F.3d 211, 219 (5th Cir.1998)................................................... 8

Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274 (1998) ............................................. 11, 14

Harden v. Rosie, 99 A.3d 950, 954 (Pa. Commw. Ct. 2014)................................................. 11, 13

Heidel v. Fowler, 325 A.3d 816, 821 (Pa. Super. Ct. 2024)........................................................ 23

Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005)........................................ 6

Jones v. Wellham, 104 F.3d 620, 627 (4th Cir.1997)...................................................................... 9

Kline ex rel. Arndt v. Mansfield, 255 Fed.Appx. 624 (3d Cir. 2007) ........................................... 9

M.W. by Wagner v. Shikellamy Sch. Dist., No. 4:20-CV-00018, 2022 WL 464146, at *4 (M.D. Pa. Feb. 15, 2022) ...................................................................................................................... 14

Mann v. Palmerton Area School Dist., 33 F.Supp.3d 530, 540-41 (M.D. Pa. 2014) .................... 8

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). .................................. 6

Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)........ 7

Natale v. Camden County Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003) ........................... 7

Pennhurst State School and Hospital v. Halderman, 451 U.S. 1 (1981)...................................... 13

People v. Shepard, 683 N.U.S.2d 790, 794 (N.U. Sup. Ct. 1998)................................................ 23

Rudolph v. State, 200 So. 3d 1186, 1190-91 (Ala. Crim. App. 2015)......................................... 23

Shepard v. Kemp, 912 F.Supp. 120, 127–28 (M.D.Pa.1995) ...................................................... 10

Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 724 (3d Cir. 1989) ................................... 8

Williams v. Borough of West Chester, 891 F.2d 458 (3d Cir. 1989). ............................................ 7

Zauflik v. Pennsbury Sch. Dist., 104 A.3d 1096, 1120 (Pa. 2014).............................................. 20

Statutes

18 Pa.C.S. § 3101 ......................................................................................................................... 26

42 Pa.C.S. §8541........................................................................................................................... 24

42 Pa.C.S. §8542(b)....................................................................................................................... 25

42 Pa.C.S. §8542(b)(9) .................................................................................................................. 25

42 Pa.C.S. Section 5551(7)............................................................................................................ 25

42 U.S.C. § 1983............................................................................................................................ 11

Rules

F.R. Civ. P. 56(a). ........................................................................................................... 9

Federal Rule of Civil Procedure 56(a), ........................................................................ 9

## I.    INTRODUCTION

The instant litigation arises out of an alleged sexual abuse allegation from John Calderaio against a former teacher at the Central Bucks School District, Joseph Ohrt.  Plaintiff Calderaio first met Ohrt in 2013 when he started at Central Bucks West in the 10th grade as a 15-year-old choir student in Ohrt's classroom. (See Exhibit "A" at paragraph 28).

Plaintiff Calderaio had a difficult home life due to his mother's alcohol addiction and parents' separation in 2012. (See Exhibit "C" at 114:5-116:10 and 18-19).  Calderaio "bounced around" in high school, living at different friends houses, his girlfriend's house and switching between living his mother and father. (See Exhibit "C" at 18-19 and Exhibit "F" at 13:4-22). Beginning in Calderaio's 8th grade school year, his mother moved out of the house and Calderaio's father would often take vacations to Florida leaving him and his siblings home alone. (See Exhibit "F' at 12:22-13:12).  Thereafter, while in high school Calderaio temporarily lived at his girlfriend Chloe's house, later with the Stuardi family and Aiden Geary's family. (See Exhibit "F" at 12:22-13:12 and Exhibit "C" at 16:19-17:9, 46:19-24).

Plaintiff testified that he began discussing some of his family issues with Ohrt during his sophomore year of high school.  (See Exhibit "C" at 114:5-8).  He stated that initially when Ohrt began to talk to him about personal issues he viewed their relationship as a "paternal relationship." (See Exhibit "C" at 123-124:9).

Plaintiff alleges that beginning during his junior year of high school (2014-2015), Ohrt began "hugging" him.  (See Exhibit "D" Calderaio's Statement to Bucks County Police 5/2021 at 42:8). During Ohrt's junior year of high school, Plaintiff alleged that there was an incident that

Ohrt "had come up from behind [him] and bear-hugged [him] over top…over [his] shoulders, pulling [him] into his chest." (See Exhibit "C" at 108:3-23).  Calderaio clarified that Ohrt only hugged him and did not touch him elsewhere during his Junior year of high school.  (See Exhibit "D" at 44:6-12 and 45:11-23). He did not report the incident and there were no witnesses.  (See Exhibit "B" at Interrogatory No. 10 and Exhibit "C" at 113-114:4).

Plaintiff, then, alleges that during his senior year of high school that Ohrt often hugged him and put his face into his neck.  (See Exhibit "C" at 136:7-10). He also claims that Ohrt hugged him from behind with his genitals pressed into his backside. (See Exhibit "C" at 1379-13). Again, Plaintiff concedes that he did not report the conduct and there were no witnesses. (See Exhibit "B" at Interrogatory No. 10 and Exhibit "C" 137:20-23).

Calderaio also claims that on occasion during his senior year he would go to Ohrt's home for choir-related meetings. (See Exhibit "C" at 150).  Calderaio explained that Ohrt had a barn separate from his home that was fully renovated and heated as an eclectic location for music related practices/meetings.  (See Exhibit "C" at 151:23-152:5).  The barn had a baby grand piano and a stage where choirs would practice, rehearse and perform.  (See Exhibit "C" at 160:24-161:5). Although Calderaio's mother was aware that he would go to Ohrt's barn for choir related meetings, Calderaio clarified that no one at the school, including administration, teachers, and/or staff were aware that he would go to Ohrt's barn.  (See Exhibit "C" at 152:24-153:4). Terry Calderaio  never raised any concerns about her son going to Ohrt's barn.  (See Exhibit "C" at 152:6-11).  While at Ohrt's home, Calderaio alleges that Ohrt would engage in "hugging, grabbing [his] butt from behind, pushing into [his] personal space, hugging and pushing his face into [his] neck, patting [his] stomach, the lower of [his] back." (See Exhibit "C" at 151:14-20).

2

Again, this conduct occurred off school grounds, there were no witnesses and Calderaio did not

report the conduct (See Id. and See Exhibit "B" at Interrogatory No. 10).

      Next, Calderaio claims that choir took a trip to Washington, D.C. in 2016.  While in D.C.

on the choir trip, Plaintiff alleges that Ohrt "rubbed his thigh and inched his hands towards

[Calderaio's] penis." (See Exhibit "C" at 139:3-6).  Plaintiff concedes that Ohrt did not touch his

penis, because he claims that a chaperone walked into the room.  (See Exhibit "C" at 139:4-10).

Shortly thereafter there was an anonymous report to Child Line presumably reporting this

particular incident.  Child Line referred the complaint to the police department for investigation

since Mr. Calderaio was over the age of 18 years old.  (See Exhibit "B" at Interrogatory No. 10

and Exhibit "E" Police Investigation Documents).  Plaintiff participated with the police

investigation and vehemently denied the allegations of any inappropriate relationship with Ohrt.

Mr. Calderaio provided a sworn written statement to the police stating:

> I, John Calderaio, hereby give the following written statement:
>
> When I was told that somebody had made this accusation, I was
> surprised, upset and relatively pissed off (to explain my feelings-
> excuse the language).  I have known Dr. Ohrt for about as long as I
> have been at West and can say that I would <u>never</u> expect to
> see/experience/hear of Dr. Ohrt doing anything outside of his
> responsibility/job as a teaching in any irresponsible/inappropriate
> way whatsoever.  Dr. Ohrt is a respectable, respectful and
> reputable man.  He has the highest of integrity and does a fantastic
> job as a choir teacher.  He is helpful, cares about his students, is
> respectful, patient, yet stern at the same time.  He is nothing but
> professional.  It is sad/frustrating to me that someone would say
> something like that about the guy.  He is simply nothing like that.
> I'm rather disgusted that someone I know and he knows
> would/could have potentially say that about him.  He does <u>not</u>
> deserve that and nor do I.  This allegation is <u>FALSE</u>.

(See Exhibit "E" Child & Youth Investigation 4/2016 at bates stamp 5279-5280).

      Further, Mr. Calderaio's mother, Terry Calderaio, also informed the police detective that

she was "amazed that someone would accuse Dr. Ohrt of any wrong doing." (See Exhibit "E" at

bates stamp 5123).  The police investigation was ruled as "unfounded and closed." (See Exhibit "E" at bates stamp 5120).

After the April 2016 incident in Washington, D.C., Plaintiff claims that he distanced himself from Ohrt and had "…virtually no contact.  Even communication, no communication virtually." (See Exhibit "C" at 142:9-16).  Plaintiff graduated high school in June 2016.  (See Exhibit "C" at 46:15-21).

Following graduation, however, Calderaio claims that he began to enter into a professional relationship with Ohrt due to his involvement and connections in the music industry. (See Exhibit "C" at 142:17-143:12).  Calderaio testified that he began communicating with Ohrt after his graduation and while he was no longer in school in an attempt to help his music career. (See Exhibit "C" at 144:3-9).  In fact, Plaintiff even moved in with Ohrt after his graduation. (See Exhibit "C" at 182:8 and 211:22-212:3).

Then, in 2019, while Calderaio was 21 years old, he claims that he went to Kansas City with Ohrt.  While in Kansas City the two attended a party at Charles Buffy's penthouse. (See Exhibit "C' at 55:4-22).  Calderaio explained that Buffy was a Grammy-award winning conductor, composer and director. (See Exhibit "C' at 55:4-22).  Plaintiff concedes that while at the party he drank too much alcohol and smoked pot.  (See Exhibit "C' at 55:21-56:6).  Plaintiff alleges that during the night Ohrt came into the bedroom, put his hands under his pants and attempted to masturbate him.  (See Exhibit "C" at 56:16-21).  Calderaio claims that he confronted Ohrt about the behavior on their flight home and broke off communications with Ohrt. (See Exhibit "C" at 57:4-23). Despite the fact that Calderaio claimed he was going to cease communications with Ohrt, he did concede that he slept at his house a few more times. (See

Exhibit "C" at 60:11-19). Notably, this event occurred more than three (3) years after Plaintiff graduated high school and while he was 21 years of age. (See Exhibit "C" at 55:3-6).

In March 2022 a criminal complaint was filed against Ohrt for indecent assault and corruption of minors, stemming from incidents that occurred in 1991-1992 and 1995-1996 and which did **not** involve or relate to Calderaio. (See Exhibit "N" Criminal Complaint). The day before news of the criminal complaint hit newspapers, Calderaio for the first time told his family of the allegations against Ohrt. (See Exhibit "C" at 122:3-5). Thereafter, Calderaio filed the instant litigation against Central Bucks School District for violations of Title IX, §1983 and negligence. Notably, Plaintiff did not file suit against Ohrt himself. Therefore, although the crux of Plaintiff's molestation allegations occur while Calderaio was 21 years old and living with Ohrt, this litigation is focused on the incidents and allegations that occurred while Plaintiff was in high school.

With regards to Plaintiff's allegations involving Central Bucks School District, the facts remain: (1) there were no witnesses to the alleged sexual abuse; (2) Plaintiff and his parents did not report the alleged sexual abuse to the District at any time; (3) Plaintiff's parents and closest friends did not have knowledge of the abuse until years after Calderaio graduated high school; (4) when questioned about his relationship with Ohrt, Calderaio vehemently denied any inappropriate relations to police detectives in a sworn affidavit. Thus, the District cannot be liable under Title IX, § 1983 and/or for negligence. These issues will be discussed in detail below.

## II.    STATEMENT OF MATERIAL FACTS

See attached Statement of Material Facts

## III.    LEGAL ARGUMENT

### A.    Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). With respect to materiality, the Supreme Court has recognized:

> [T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. This materiality inquiry is independent of and separate from the question of the incorporation of the evidentiary standard into the summary judgment determination. That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Moreover, when assessing a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party . . ." and draw all reasonable inferences in favor of the same. Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See* Celotex, 477 U.S. at 324. Once the moving party has demonstrated to the court the absence of a material factual dispute, the non-moving party must go beyond "simply show[ing] that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citation omitted); *see also* Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1362-63 (3d Cir. 1992) (holding, non-moving party must go beyond allegations set forth in pleadings and counter with evidence presenting "specific facts showing that there is a genuine issue for trial." (citation omitted)). "[A] nonmoving party must adduce more than a mere scintilla of evidence in its favor . . . and cannot simply reassert factually unsupported allegations contained in its pleadings[.]" Williams v.

Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989) (citations omitted). Accordingly, if the evidence submitted by the non-moving party is "merely colorable" or "is not *significantly* probative, . . . summary judgment may be granted." *See* Anderson, 477 U.S. at 249–50 (citations omitted and emphasis added).

### B.     (Count I)- Civil Rights Violation Under 42 U.S.C. §1983

Plaintiff alleges that the District was "deliberately indifferent" and thus liable to John Calderaio for violations of his Fourth (4th) Amendment right to bodily integrity arising out of the allegations involving Joseph Ohrt.  Plaintiff's § 1983 claim fails, because Plaintiff has not demonstrated that his 4th Amendment rights were violated as a result of any "policy" or "custom" from the Central Bucks School District.

To state a claim under § 1983, the plaintiffs must show that the defendant District, acting under color of state law, deprived plaintiff of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999).  Recovery under § 1983 against a "municipal agency," such as Central Bucks School District, cannot be premised upon *respondeat superior* liability. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Poe v. Southeast Delco School District, 165 F. SUpp. 3d 271 (E.D. Pa. 2015).  To impose liability against a school district under § 1983, a plaintiff must show a "relevant policy or custom, and that the policy caused the constitutional violation … allege[d]." Natale v. Camden County Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). See also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) ("a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to

represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

"Municipalities such as the school districts are not liable under § 1983 merely for employing someone who violates a person's civil rights; rather, a municipality that does not directly violate a person's civil rights is liable only where it has in place a policy or custom that led to the violation." Doe C.D. v. Career Tech. Centerof Lackawanna Cnty., No. CV 3:20-0088, 2020 WL 1165837, at *18 (M.D. Pa. Mar. 11, 2020); See also Mann v. Palmerton Area School Dist., 33 F.Supp.3d 530, 540-41 (M.D. Pa. 2014).("Municipal liability only attaches when a plaintiff demonstrates that an official policy or custom caused the asserted constitutional deprivation." (citation omitted); Beck v. City of Pittsburgh, 89 F.3d 966, 972 (3d Cir. 1996) (Municipal liability applies "to only those constitutional torts actually caused by the municipality."). The plaintiff bears the burden of identifying the policy or custom. Id.

"To establish liability under Section 1983 plaintiff must show that (1) the school district's policy, practice, or custom played an affirmative role in bringing about the sexual abuse and (2) the school district acted with deliberate indifference to that abuse." Doe v. Boyertown Area Sch. Dist., 10 F. Supp. 3d 637, 650 (E.D. Pa. 2014)(citing Black by Black v. Indiana Area School District, 985 F.2d 707, 712 (3d Cir.1993)); see also Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 724 (3d Cir. 1989).  Importantly, this Court has held that "a mere failure to investigate a claim itself is insufficient to establish a custom." Id.  Further, a mistaken or erroneous investigation is also insufficient to establish a custom. Doe v. Dallas Ind. Sch. Dist., 153 F.3d 211, 219 (5th Cir.1998) (concluding that school official who investigated complaint of sexual abuse was not deliberately indifferent even though official erroneously concluded that complaint was baseless). "In order for plaintiff to establish deliberate indifference 'something

more culpable must be shown than a negligent failure to recognize a high risk of harm to plaintiffs.'" Id. (citing *Black*, 985 F.2d at 712–713). Actions that in hindsight are "unfortunate" or even "imprudent" will not suffice. Jones v. Wellham, 104 F.3d 620, 627 (4th Cir.1997).

The Third Circuit Court of Appeals squarely decided a very similar matter in the case of Kline ex rel. Arndt v. Mansfield, 255 Fed.Appx. 624 (3d Cir. 2007). In Kline the Plaintiff was a student in the Hamburg Area School District and became involved in an intimate and eventually a sexual relationship with her teacher, Troy Mansfield. Kline and her mother both concede that neither reported complaints of sexual abuse to school officials. Plaintiff, however, argued that the District was aware of the contacts between herself and Mansfield and should have recognized the signs of sexual abuse. Specifically, Kline was suspended from school for skipping band practice to be with Mansfield in his classroom, numerous teachers complained that the two were spending too much time together and Kline even had one teacher that forbid Kline from going to Mansfield's classroom for any reason. Id. Ultimately, Mansfield was charged with various sexual offenses arising from his conduct with Kline and pled guilty in 2004. Id.

Kline filed suit against the School District and Mansfield alleging, inter alia, violations of 42 U.S.C. §1983 and Title IX. Just like Calderaio's allegation in Count I, Plaintiff Kline alleged in the Complaint that the School District had a policy or custom of deliberate indifference towards her sexual abuse. Ultimately, the District Court granted Summary Judgment for the District and the Third Circuit affirmed. With regards to the § 1983 claims, the Third Circuit held that summary judgment was appropriate because reports of spending an inordinate amount of time with a teacher does not create an issue of material fact as to whether the District was deliberately indifferent. Id. See also Shepard v. Kemp, 912 F.Supp. 120, 127–28

(M.D.Pa.1995)(noting that officials were aware of reports that children were spending inordinate amount of time with teacher, but that there was no disclosure of any wrongdoing)

In the instant case, Plaintiff (like <u>Kline</u>) has failed to establish any policy or custom that led to Ohrt's sexual abuse of Calderaio.  In the Complaint the Plaintiff alleges that the following actions constituted "deliberate indifference" towards the sexual abuse suffered by Calderaio:

a) Refusing to investigate Ohrt's sexual misconduct or discipline him despite a complaint from a parent during the 1991-92 school year that Ohrt had molested her 11 year old son (Roe);

b) The District's transferring Ohrt to CB West despite the fact that it knew or should have known that he was a sexual predator and would place other students at risk of being sexually abused;

c) Failing to adequately supervise Ohrt's (sic), including failing to police the remote area of the school which he occupied;

d) Failing to adequately supervise Ohrt's relationship with John Calderaio

e) The District's failure to address allegations that Ohrt engaged in sexual misconduct with John

f) Placing Ohrt in a position of trust with respect to John, including but not limited to sanctioning an independent study despite the knowledge that they had that he presented a danger to John and its other students

g) Failing to timely investigate or take any proper disciplinary action against Ohrt who the District knew, or should have known, posed a significant threat to John's health, safety and welfare;

h) Failing on multiple occasions to properly and timely investigate Ohrt's relationship with John;

i) Failing to follow proper policies and procedures to ensure identification, reporting and investigation of sexual abuse of students by teachers; and

j) Disregarding information and evidence that Ohrt had and was sexually abusing CBSD students, including John.

(See Exhibit "A" at Count I).

Here, despite Plaintiff's bold allegations in the Complaint, the evidence established in this matter does not support any of the alleged "deliberate indifference" allegations raised above. I will address each contention separately below.

First, with regards to Plaintiff's contention that the District failed to investigate a parent's complaint of sexual molestation against her 11 year old son, the facts/evidence presented in this case demonstrate that there was <u>no</u> parental report of molestation received in 1991/1992.  (See Exhibit "I" 1992 letter from Mrs. Yandolino).  In the parental letter referenced by Plaintiff, Mrs. Yandolino complained to Mr. Tennaglia about favoritism with her son and that on one occasion Ohrt grabbed her son Nick "behind the neck with great pressure and then kneed in the backside." (See Exhibit "I").  The letter is completely devoid of any allegations of molestation as alleged by Plaintiff in the Complaint.  Nonetheless, the District investigated Mrs. Yandolino's letter and addressed the complaints with Mr. Ohrt.  (See Exhibit "J").  Further, reliance on this particular 1992 incident is insufficient to establish a policy/practice of deliberate indifference necessary to warrant §1983 liability since the incident did not involve Plaintiff, was 25 years prior and did not involve similar allegations. See  <u>Harden v. Rosie</u>, 99 A.3d 950, 954 (Pa. Commw. Ct. 2014)(notice of conduct must conduct that is sufficiently similar and recent in time to put school official on notice of substantial risk of danger to students); see also <u>Gebser v. Lago Vista Indep. Sch. Dist</u>., 524 U.S. 274 (1998)(complaints by parents to a high school principal regarding a teacher's improper sexually suggestive comments to students in the classroom were insufficient to demonstrate that school officials had the "requisite notice" that the teacher was possibly involved in a sexual relationship with a student).

Plaintiff's remaining allegations of "deliberate indifference" stem from Plaintiff's contention that the District had "information and evidence" that Ohrt was sexually abusing

Calderaio.  Notably, however, Plaintiff has failed to present even a scintilla of evidence to substantiate this claim.  Countless depositions of potential witnesses were taken in this matter, including Calderaio's family members and girlfriends, all of which testified that they had *no knowledge* of any sexual harassment/abuse from Ohrt and *no one had made any reports* of sexual harassment/abuse to the District.  (See Exhibit "B" Plaintiff's Responses to Interrogatories at No. 10; See Exhibit "H" Deposition of Anthony Calderaio, Sr. at 109:2-23; and See Exhibit "G" Terry Calderaio at 63:11-64:11).  In fact, Plaintiff himself conceded that there were no witnesses to any of the alleged acts of sexual harassment/abuse. (See Exhibit "B" at No. 10).  Lack of notice, information and knowledge by the District is discussed in extensive detail below under Count II.

On the other hand, the undisputed evidence in this case demonstrates that the District had extensive policies/procedures in place prohibiting sexual harassment/abuse.  (See Exhibit "K").  District employees, including Mr. Ohrt received training on these policies. (See Exhibit "L").  Thus, Plaintiff cannot establish that a District policy or custom led to Ohrt's sexual abuse of Calderaio.  For that reason Count I must be dismissed.

As discussed in the Kline matter, allegations of spending inordinate amounts of time with the music teacher, Ohrt, are insufficient to establish "deliberate indifference."  Further, like Kline, Plaintiff and his parents concede that neither reported allegations of sexual harassment/abuse to the District.  For the reasons expressed by the Third Circuit in Kline, Plaintiff's §1983 claim fails as a matter of law and must be dismissed. <u>Kline</u>, 255 Fed.Appx. at 628.

### C.    (Count II)- Violation of Title IX

Plaintiff alleges that the District created and/or subjected John Calderaio to a hostile educational environment as a result of the actions by Joseph Ohrt, in violation of Title IX of the

Education Amendments.  (See Exhibit "A" at Count II).  Under Title IX a school district may be

held liable for a teacher's sexual harassment or abuse of a student only if:

> (1) the school district received federal financial assistance,
>
> (2) the student was subjected to discrimination on the basis of sex, and
>
> (3) an 'appropriate person'
>
> (4) had *actual notice* of, and was deliberately indifferent to, the discrimination.

Chancellor v. Pottsgrove School Dist., 501 F.Supp.2d 695, 704 (E.D.Pa.2007) (emphasis added);

See also Bostic v. Smyrna Sch. Dist., 418 F.3d 355, 359 (3d Cir. 2005) and Harden v. Rosie, 99

A.3d 950, 954 (Pa. Commw. Ct. 2014).

Title IX is only violated when the District is "deliberately indifferent" to known acts of

teacher-student discrimination.  Bostic, 418 F.3d  at 359.  Federal courts have held that "mere

knowledge of the possibility of harassment or potential for abuse is insufficient to impose

liability under Title IX." Harden v. Rosie, 99 A.3d 950, 954 (Pa. Commw. Ct. 2014); Bostic, 418

F.3d at 361; and Davis v. Monroe County Board of Education, 526 U.S. 629 (1999).  The Third

Circuit made clear in Bostic that "[c]onstructive notice or respondeat superior principles [are not

sufficient] to permit recovery under Title IX.  Bostic, 418 F.3d at 361.  The Bostic Court further

clarified that Title IX liability can also not be premised on negligence.  Id.  Thus, for liability to

attach under Title IX, there must be "actual notice" of the sexual harassment or abuse itself, and

the school district must then also display deliberate indifference to that sexual harassment.  See

Davis, 526 U.S. at 642 (citing Pennhurst State School and Hospital v. Halderman, 451 U.S. 1

(1981).  "If notice of the discriminatory conduct does not involve the plaintiff, the notice

provided to the school district must either involve known acts of sufficiently similar conduct to

that alleged by the plaintiff or known actions that are relatively recent and sufficiently

concerning that school officials are alerted to a substantial risk of danger to students.  <u>Harden</u>, 99 A.3d at 955.

"'[A]ctual knowledge' requires the School District to have known enough underlying facts to have been aware of the danger posed to the student. And to have been "deliberately indifferent" to the discrimination requires that the School District's response reflect "an official decision by the recipient not to remedy the violation"—rather than mere ineffectiveness." <u>M.W. by Wagner v. Shikellamy Sch. Dist.</u>, No. 4:20-CV-00018, 2022 WL 464146, at *4 (M.D. Pa. Feb. 15, 2022).  In <u>Gebser v. Lago Vista Indep. Sch. Dist.</u>, 524 U.S. 274 (1998), the Supreme Court held that complaints by parents to a high school principal regarding a teacher's improper sexually suggestive comments to students in the classroom were insufficient to demonstrate that school officials had the "requisite notice" that the teacher was possibly involved in a sexual relationship with a student.

Here, Plaintiff has failed to provide any evidence to demonstrate that the Central Bucks School District had "*actual knowledge*" of Ohrt's sexual harassment to Calderaio.  The factual evidence produced in this case establishes: (1) there were no witnesses to the alleged sexual abuse; (2) Plaintiff and his parents did not report the alleged sexual abuse to the District at any time; (3) Plaintiff's parents and closest friends did not have knowledge of the abuse until years after Calderaio graduated high school; (4) when questioned about his relationship with Ohrt, Calderaio vehemently denied any inappropriate relations to police detectives in a sworn affidavit. Each of these factors will be discussed below.

First, Calderaio concedes that he did not report any allegations of sexual harassment or abuse to any school administrator.  (See Exhibit "B" at Interrogatory No. 10).  In fact, Plaintiff concedes that the first time he reported any of the alleged sexual abuse incidents to anyone was

14

in May 2019 to his girlfriend (Peyton Grow), which was approximately one year after his graduation.  (See Exhibit "B" at Interrogatory No. 10).  Next, with regards to witnesses, Plaintiff concedes that there was only one potential witness (a choir member's mother) that allegedly walked into a room the choir was using as a dressing room in Washington, D.C. and may have witnessed Ohrt rubbing Calderaio's leg.  (See Exhibit "B" at Interrogatory No. 10 and Exhibit "C" at 138:19- 139:7 ).  This particular incident allegedly occurred in April 2016 and immediately after an anonymous report was made to Child Line.  Child Line referred the complaint to the police department for investigation since Mr. Calderaio was over the age of 18 years old.  (See Exhibit "B" at Interrogatory No. 10 and Exhibit "E" Police Investigation Documents).  In fact, Plaintiff participated with the police  investigation and vehemently denied the allegations of any inappropriate relationship with Ohrt.  Mr. Calderaio provided a sworn written statement to the police stating:

> I, John Calderaio, hereby give the following written statement:
>
> When I was told that somebody had made this accusation, I was surprised, upset and relatively pissed off (to explain my feelings- excuse the language).  I have known Dr. Ohrt for about as long as I have been at West and can say that I would never expect to see/experience/hear of Dr. Ohrt doing anything outside of his responsibility/job as a teaching in any irresponsible/inappropriate way whatsoever.  Dr. Ohrt is a respectable, respectful and reputable man.  He has the highest of integrity and does a fantastic job as a choir teacher.  He is helpful, cares about his students, is respectful, patient, yet stern at the same time.  He is nothing but professional.  It is sad/frustrating to me that someone would say something like that about the guy.  He is simply nothing like that. I'm rather disgusted that someone I know and he knows would/could have potentially say that about him.  He does not deserve that and nor do I.  This allegation is FALSE.

(See Exhibit "E" Child & Youth Investigation 4/2016 at bates stamp 5279-5280).

Further, Mr. Calderaio's mother, Terry Calderaio, also informed the police detective that she was "amazed that someone would accuse Dr. Ohrt of any wrong doing." (See Exhibit "E" at

bates stamp 5123).  The police investigation was ruled as "unfounded and closed." (See Exhibit "E" at bates stamp 5120).

Finally, Countless depositions of potential witnesses were taken in this matter, including Calderaio's family members and girlfriends, all of which testified that they had *no knowledge* of any sexual harassment/abuse from Ohrt and *no one had made any reports* of sexual harassment/abuse to the District.

Plaintiff's mother, Terry Calderaio, testified that she had no knowledge of any sexual harassment/abuse from Ohrt.  In fact, when she questioned her son about the 2016 Child Line report, Calderaio again denied any inappropriate conduct to her.  (See Exhibit "G" Deposition of Terry Calderaio at 62:12-20).  Terry Calderaio also denied hearing any concerns from other parents about student relationships with Ohrt. (See Exhibit "G" at 63:11-64:11).  Further, she testified:

> Q: Okay.  Did you know, at some point, that John was living at Ohrt's house?
>
> A: Yes, I did.

(See Exhibit "G" at 66:7-10).

> Q: Did you express any concerns to John about that?
>
> A: No, I didn't.  When I had conversations with Dr. Ohrt, he – his conversations with me were that he was presenting himself as a type of father-figure, a friend, a confidant, someone who wanted to support John through difficult things.  He asked questions and my—what I took from the conversations was that he was trying to be an adult role model…

(See Exhibit "G" at 66:20-67:8).

Anthony Calderaio, Plaintiff's father conceded that he never reported any sexual harassment/abuse to the District.  Anthony Calderaio specifically testified that the only concerns

he reported to Principal Booker regarding Ohrt were simply that John was spending too much time after school in music class.  Specifically, he testified as follows:

> A:…And I also voiced my concern that—on multiple fronts, and here are the points that I was wanting to discuss with Principal Booker.
>
> Number one, the fact that you know, John took the car to school without my permission and I wanted to remove it from the parking lot.  That was one thing.
>
> Number two, is I wanted him to get the key from John in class and bring it to me.
>
> Number three, that he was spending way too much time after hours at school with his music teacher.
>
> Next, that John was exhibiting antifamily behavior; spending less and less time with the family.  That his behavior seemed to indicate that there may be some substance involved because his behavior—it wasn't just—in my observation…

(See Exhibit "H" Deposition of Anthony Calderaio, Sr. at 109:2-23).

Chloe Grau testified that she dated Calderaio from approximately age 12 to age 18 and that he temporarily lived with her and her family.  (See Exhibit "F" Deposition of Grau at 18:2-12 and 20:1-5).  Although Chloe was particularly close with Calderaio throughout his high school career, she testified that she had no knowledge of any sexual harassment/abuse from Ohrt.  Specifically Chloe testified:

> Q: Did you ever hear any comments or rumors that John was gay with Dr. Ohrt?
>
> A: No.
>
> Q: Did John ever tell you at any point that Dr. Ohrt hugged him or kissed him in choir?
>
> A: No.

(See Exhibit "F at 27:21-28:1).

Q: Okay. And during the time that you were in high school, you did not suspect that there were any inappropriate relationship between Dr. Ohrt and John?

A: I mean, they would text and call each other, which I thought was odd, but I was also a kid at the time, so…

(See Exhibit "F" at 33:7-13).

Q: Were any of the text messages, to your knowledge, inappropriate?

A: No.

(See Exhibit "F" at 33:17-19).

John Calderaio, himself, testified that Chloe Grau and her mother, with whom he resided during portions of high school, actually met Dr. Ohrt during Calderaio's senior year of high school. He testified that both Chloe and her mother thought Ohrt was "a good person for [him] to be involved with." (See Exhibit "C" at 120:7-24). Calderaio conceded that he had not disclosed any complaints of Ohrt to either Chloe or her mother during high school. (See Exhibit "C" at 121:7-19). He conceded that it was not until after high school that Chloe and her mother began to feel that "maybe there was something off about [Ohrt]." (See Exhibit "C" at 120:17-121:6).

Finally, Calderaio conceded that other teachers, including Jessica Bostok (theater director) and Kevin McDermott (one of Calderaio's teachers at CB West), had no knowledge of the alleged abuse from Ohrt. (See Exhibit "C" at 145-147:7).

As discussed in the plethora of case law cited above, in order to impose liability under Title IX, there must first be "actual notice" of the sexual harassment or abuse itself before even determining whether the District acted deliberate indifference to the sexual harassment. See Davis, 526 U.S. at 642 (citing Pennhurst State School and Hospital v. Halderman, 451 U.S. 1

(1981); <u>Bostic</u>, 418 F.3d at 359.  The facts and evidence in this matter make abundantly clear

that the *no one witnessed* the alleged sexual harassment/abuse, *no one reported* the alleged

sexual harassment/abuse, John Calderaio vehemently denied under sworn affidavit any sexual

harassment/abuse and even Plaintiff's closest family members and friends had *no knowledge* of

the alleged sexual harassment/abuse.  Thus, the District did not have "actual knowledge" of any

alleged sexual harassment to Calderaio until years after his graduation when criminal charges

were filed against Ohrt.

It is anticipated that in opposition to the instant Motion, Plaintiff will contend that the

District "should have known" of Ohrt's propensity to commit such acts as a result of a complaint

received by Nicholas Yandolino's mother in 1992 (approximately 25 years prior to the alleged

incidents involving Calderaio).  In the parental letter referenced by Plaintiff, Mrs. Yandolino

complained to Mr. Tennaglia about favoritism with her son and that on one occasion Ohrt

grabbed her son Nick "behind the neck with great pressure and then kneed in the backside." (See

Exhibit "I").  The letter is completely devoid of any allegations of molestation as alleged by

Plaintiff in the Complaint.  Nonetheless, the District investigated Mrs. Yandolino's letter and

addressed the complaints with Mr. Ohrt.  (See Exhibit "J").

Reliance on this particular 1992 incident is insufficient to establish a policy/practice of

deliberate indifference necessary to warrant §1983 liability since the incident did not involve

Plaintiff, was 25 years prior and did not involve similar allegations. See  <u>Harden v. Rosie</u>, 99

A.3d 950, 954 (Pa. Commw. Ct. 2014)(notice of conduct must conduct that is sufficiently similar

and recent in time to put school official on notice of substantial risk of danger to students); see

also <u>Gebser v. Lago Vista Indep. Sch. Dist.</u>, 524 U.S. 274 (1998)(complaints by parents to a high

school principal regarding a teacher's improper sexually suggestive comments to students in the

classroom were insufficient to demonstrate that school officials had the "requisite notice" that the teacher was possibly involved in a sexual relationship with a student). Further, the fact that the investigation produced erroneous results does not establish deliberate indifference. Doe v. Dallas Ind. Sch. Dist., 153 F.3d 211, 219 (5th Cir.1998) (concluding that school official who investigated complaint of sexual abuse was not deliberately indifferent even though official erroneously concluded that complaint was baseless).

Thus, the District did not have "actual knowledge" of any alleged sexual harassment to Calderaio until years after his graduation when criminal charges were filed against Ohrt. Therefore, it is not necessary to move to the second element and determine whether the District was "deliberately indifferent" to known acts of sexual harassment against Calderaio.  Plaintiff's Title IX claim in Count II must fail as a matter of law.

### D.    (Count III) Negligent Retention, Transfer, Supervision

Count III of Plaintiff's Complaint must fail, because the School District is immune from negligence based tort claims under the Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8541, et seq.  The Tort Claims Act states that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."  See 42 Pa.C.S. §8541.  The protections are designed to ensure that local agencies and school districts are able to continue to "serve the public and provide critical" educational services to the children.  See Zauflik v. Pennsbury Sch. Dist., 104 A.3d 1096, 1120 (Pa. 2014).

Governmental immunity can only be waived pursuant to nine enumerated exceptions. See 42 Pa.C.S. §8542(b).  The Ninth Exceptions to governmental immunity applies for sexual abuse. The exception states:

(9) Sexual abuse- Conduct which constitutes an offense enumerated under Section 5551(7) (relating to no limitation applicable) if the injuries to the plaintiff were caused by actions or omissions of the local agency which constitute negligence.

See 42 Pa.C.S. §8542(b)(*emphasis added*).

Thus, in order to pursue a claim of negligent retention/transfer/supervision, the Plaintiff here must first demonstrate: (1) that Joseph Ohrt engaged in conduct with John Calderaio which constitutes an offense enumerated under 42 Pa.C.S. Section 5551(7) while he was under the age of 18 years old;  and (2) that the Central Bucks' School District was, in fact, negligent in the retention and supervision of Joseph Ohrt.  Here, Plaintiff alleges that Section 3124.2 (institutional sexual assault) applies as the enumerated offense under Section 5551(7). See 42 Pa. Stat. and Cons. Stat. Ann. § 5551 (West)(emphasis added).

### 1.    The Ninth Exception Is Not Triggered, Because Plaintiff Has Failed to Establish "Indecent Contact" for Institutional Sexual Assault Has Occurred

Plaintiff seeks to avoid governmental immunity under the Tort Claims Act through the *ninth exception, sexual abuse*.  See 42 Pa.C.S. §8542(b)(*9).*  Specifically, Plaintiff alleges in the Complaint that their ninth exception theory is premised upon an allegation that Ohrt committed the crimes of Institutional Sexual Assault, 18 Pa.C.S. § 3124.2 upon John Calderaio while he was a student at CB West and under the age of 18 years old. (See Exhibit "A" Plaintiff's Complaint at ¶ 30).  Institutional Sexual Assault is defined as:

§ 3124.2 (a.2) Schools.--

(1) …a person who is a volunteer or an employee of a school or any other person who has direct contact with a student at a school commits a felony of the third degree when he engages in sexual intercourse, deviate sexual intercourse or *indecent contact with a student of the school.*

18 Pa. Stat. and Cons. Stat. Ann. § 3124.2 (West)(emphasis added).

Here, Calderaio does not allege that any sexual intercourse or deviant sexual intercourse occurred with Ohrt.  Instead, Plaintiff alleges that the institutional sexual assault claim is premised upon an allegation of indecent contact with Ohrt.  "Indecent contact" is defined as any: [1] touching of the sexual or other intimate parts of the person for; [2] the purposes of arousing or gratifying sexual desire, in any person. See 18 Pa.C.S. § 3101.  The Pennsylvania Supreme Court has made abundantly clear that both elements of this test must be proven independently. See <u>Commonwealth v. Gamby</u>, 238 A.3d 298, 310 (Pa. 2022).

The first inquiry under this test, is whether Ohrt touched an "intimate body part" on Calderaio while he was under the age of 18 years old[1].  <u>Id</u>.  Calderaio's date of birth is 12/19/1997, therefore he turned 18 years of age on 12/19/2015.  (See Exhibit "B" Response to Interrogatory No. 1).  Thus, for purposes of the first inquiry Plaintiff must establish that Ohrt touched an intimate body part of his prior to 12/19/2015.  Plaintiff has failed to do so.

Here, Plaintiff concedes that his allegations of "molestation" against Ohrt occurred when he was 21 or 22 years of age, much after his high school graduation. (See Exhibit "C" Plaintiff's Deposition Transcript at 55:3-15).  Further, the criminal charges that Ohrt was convicted of related to invasion of privacy, stemming from incidents that occurred when Calderaio was 21 or 22 years of age and living with Ohrt.  (See Exhibit "C" at 101:8-14 and Exhibit "A" at ¶ 68). Therefore, the criminal charges and alleged "molestation" claim will not suffice to establish the first element, because clearly Calderaio was over the age of 18 years old.  Additionally,

---

[1] See <u>W. on behalf of S.W. v. Pittsburgh Pub. Sch.</u>, 327 A.3d 340, 346 (Pa. Commw. Ct. 2024) "[b]y its plain terms, Section 8542(b)(9) of the Tort Claims Act specifically incorporates the provisions of Section 5551(7) of the Judicial Code and, by its plain terms, Section 5551(7) is specifically limited to crimes involving a " 'victim [who] was under eighteen years of age at the time of the offense.' "

Calderaio's claim that Ohrt "rubbed his inner thigh and inched towards his penis," occurred in April 2016, after he turned 18 years of age.  (See Exhibit "C" at 138:19- 139:7).  Again this allegation cannot be utilized to establish indecent assault, as Plaintiff was over 18 years of age.

Calderaio's ONLY allegation of physical contact with Ohrt that occurred prior to his 18th birthday, was an allegation that Ohrt often "hugged" him.  (See Exhibit "D" Transcript of Police Interview 42:5-9).  Calderaio clarified that Ohrt only hugged him and did not touch him elsewhere during his Junior year of high school.  (See Exhibit "D" at 44:6-12 and 45:11-23).  On one particular occasion, Plaintiff alleged that there was an incident that Ohrt "had come up from behind [him] and bear-hugged [him] over top…over [his] shoulders, pulling [him] into his chest." (See Exhibit "C" at 108:3-23).  The case law, however, demonstrates that hugging, even bear-hugging do not constitute "intimate body parts" for purposes of the first element of "indecent contact."  See Rudolph v. State, 200 So. 3d 1186, 1190-91 (Ala. Crim. App. 2015)(grabbing and touching a victim's shoulder did not constitute an "intimate part"); see also People v. Shepard, 683 N.U.S.2d 790, 794 (N.U. Sup. Ct. 1998)("unlawfully hugging" a female does not constitute touching of the sexual or other intimate parts of a person); see also Heidel v. Fowler, 325 A.3d 816, 821 (Pa. Super. Ct. 2024)(ordinary social interactions are—as a matter of law—not intimate parts).

Based on the fact that Plaintiff cannot establish that Ohrt touched any intimate body part on Calderaio prior to him turning 18 years of age, Plaintiff cannot establish the first element for "indecent contact" and it is not necessary to evaluate the second element to determine whether Ohrt had any sexual motive behind the "hugging" or "bear-hug."  Since Plaintiff cannot establish "indecent contact," Plaintiff's negligence based claim does not fit within the ninth (9th) exception

to governmental immunity under the Tort Claims Act.  Therefore, the District's immunity

remains and Plaintiff's Count III must be dismissed.

### 2.    Plaintiff Cannot Establish That The District Negligently Hired or Supervised Ohrt

In addition to the foregoing, Count III of Plaintiff's Complaint fails because, Plaintiff has

failed to produce any evidence showing that the District negligently hired and/or supervised

Ohrt, such that its negligence caused Ohrt's injuries.  Even if Plaintiff is able to demonstrate both

elements of "indecent contact" discussed in more detail above, Plaintiff cannot establish that the

District was negligent in hiring or retaining Ohrt, which is required in order to fall within the

ninth exception.  To prove that Plaintiff's injuries were caused by the District and thus trigger the

Ninth Exception, a plaintiff must prove the following:

> (1) A failure to exercise ordinary care to prevent an intentional harm by an employee acting outside the scope of his employment,
>
> (2) That is committed on the employer's premises;
>
> (3) When the employer knows or has reason to know of the necessity and ability to control the employee.

Belmont v. MB Inc. Partners, Inc., 708 F.3d 470, 477-78 (3d Cir. 2013); see also Dempsy v.

Walso Bureau, Inc., 246 A.2d 418, 420 (Pa. 1968).

Here, as discussed in detail above, there is no evidence in the record to demonstrate that

the Central Bucks School District had notice of Ohrt's sexual harassment to Calderaio.  The

factual evidence produced in this case establishes: (1) there were no witnesses to the alleged

sexual abuse; (2) Plaintiff and his parents did not report the alleged sexual abuse to the District at

any time; (3) Plaintiff's parents and closest friends did not have knowledge of the abuse until

years after Calderaio graduated high school; (4) when questioned about his relationship with

Ohrt, Calderaio vehemently denied any inappropriate relations to police detectives in a sworn

affidavit.  Additionally, the evidence demonstrates that the District had policies/procedures prohibiting sexual harassment/abuse and provided training on those policies.  (See Exhibit "K" and "L").  Finally, in accordance with State mandates Plaintiff underwent pre-employment criminal background screening and child abuse clearance, which was updated every few years. (See Exhibit "M" at 34:5-35:7).  As such, there is no evidence to demonstrate that the District was negligent in the hiring or supervision of Ohrt.

## IV.    CONCLUSION

Based on the foregoing, Defendant, Central Bucks School District, respectfully requests that this Court grant the instant Motion for Summary Judgment, dismissing Plaintiff's Complaint with prejudice in its entirety.

**MARSHALL DENNEHEY, P.C.**

By:    _____

Joseph J. Santarone, Jr., Esquire
2000 Market Street, Suite 2300
Philadelphia, PA  19103
(215) 575-2626
Attorney ID No.:  45723
jjsantarone@mdwcg.com
Attorney for Defendant,
Central Bucks School District


*/s/ Ashley L. Toth*

Ashley L. Toth, Esquire
2000 Market Street, Suite 2300
Philadelphia, PA  19103
(856) 414-6400
Attorney ID Nos.:  307416
altoth@mdwcg.com

Attorneys for Defendant,
Central Bucks School District


Dated: May 25, 2025

25

**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN CALDERAIO | : | CIVIL ACTION NO. 2:23-cv- 04218 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| CENTRAL BUCKS SCHOOL DISTRICT | : | |
| | : | |
| Defendant. | : | |
| | : | |

## <u>CERTIFICATE OF SERVICE</u>

I, Ashley L. Toth, Esquire hereby certifies that a true and correct copy of the foregoing

Motion for Summary Judgment, was electronically filed with the Court this date and is available

for viewing and downloading from the ECF System.

*/s/ Ashley L. Toth*

Ashley L. Toth, Esquire
2000 Market Street, Suite 2300
Philadelphia, PA  19103
(856) 414-6400
Attorney ID Nos.:  307416
altoth@mdwcg.com

Attorneys for Defendant,
Central Bucks School District

Dated: <u>May 25, 2025</u>

**IN THE UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN CALDERAIO | : CIVIL ACTION NO. 2:23-cv- 04218 |
| Plaintiff, | : |
| v. | : JURY TRIAL DEMANDED |
| CENTRAL BUCKS SCHOOL DISTRICT | : |
| Defendant. | : |

## <u>CERTIFICATE OF COUNSEL</u>

I, ASHLEY L. TOTH, ESQ., of full age, hereby certify as follows:

I am an Attorney at Law in the State of Pennsylvania and a shareholder with the law firm of Marshall Dennehey, P.C.  I am familiar with the facts and circumstances of this matter.   I represent Central Bucks School District, in regard to this matter.  I submit this Certification in support of Defendant's Motion for Summary Judgment.

The attached exhibits are true and correct copies which are relied upon by the Defendant in support of the Motion for Summary Judgment.

I declare under penalty of perjury that the foregoing is true and correct. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

*/s/ Ashley L. Toth*
Ashley L. Toth, Esquire
2000 Market Street, Suite 2300
Philadelphia, PA  19103
(856) 414-6400
Attorney ID Nos.:  307416
altoth@mdwcg.com
Attorneys for Defendant,
Central Bucks School District

Dated: <u>May 25, 2025</u>