# EXHIBIT A

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
JOHN CALDERAIO

**DEFENDANTS**
CENTRAL BUCKS SCHOOL DISTRICT

(b) County of Residence of First Listed Plaintiff   Palm Beach County, FL
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Alan L. Yatvin and Noah S. Cohen
Weir Greenblatt Pierce LLP (ph. 215-665-8181)
1339 Chestnut Street, Suite 500 Philadelphia, PA 19107

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

|                                   | PTF | DEF |                                                            | PTF | DEF |
|-----------------------------------|-----|-----|------------------------------------------------------------|-----|-----|
| Citizen of This State             | [ ] 1 | [x] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State          | [x] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation                                             | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/Exchange |
| | | | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| | | | | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [x] 440 Other Civil Rights | **Habeas Corpus:** | | | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1983 and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681

Brief description of cause:
Failure to protect from sexual abuse, gender discrimination including sexual harassment, sexual assault, and a hostile educational environment

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE: Oct 31, 2023
SIGNATURE OF ATTORNEY OF RECORD: *Alan F. Yatvin* (signature)

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

Case 2:23-cv-04218-MSG  Document 31-2  Filed 05/26/25  Page 3 of 20
05/2023
Case 2:23-cv-04218-GEKP  Document 1  Filed 10/31/23  Page 2 of 19

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DESIGNATION FORM
*(to be used by counsel to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: c/o Weir Greenblatt Pierce LLP 1339 Chestnut Street, Suite 2500 Philadelphia, PA 19107

Address of Defendant: 20 Weldon Drive, Doylestown, PA 18901

Place of Accident, Incident or Transaction: 480 Linden Avenue, Doylestown, PA 18901 and 375 West Court Street, Doylestown, PA 18901

---

**RELATED CASE IF ANY:**
Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑
2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit Pending or within one year previously terminated action in this court?  Yes ☐  No ☑
3. Does this case involve the validity or infringement of a patent already in suit or any earlier Numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑
4. Is this case a second or successive habeas corpus, social security appeal, or pro se case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any now pending or within one year previously terminated action in this court except as note above.

DATE: October 31, 2023    _____Alan F. Yatvin_____    38716
Attorney-at-Law *(Must sign above)*    Attorney I.D. # *(if applicable)*

---

**Civil** (Place a √ in one category only)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts)
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Wage and Hour Class Action/Collective Action
6. ☐ Patent
7. ☐ Copyright/Trademark
8. ☐ Employment
9. ☐ Labor-Management Relations
10. ☑ Civil Rights
11. ☐ Habeas Corpus
12. ☐ Securities Cases
13. ☐ Social Security Review Cases
14. ☐ Qui Tam Cases
15. ☐ All Other Federal Question Cases. *(Please specify)*: _____

B. *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury *(Please specify)*: _____
7. ☐ Products Liability
8. ☐ All Other Diversity Cases: *(Please specify)* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration)*

I, Alan L. Yatvin, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2 § 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: October 31, 2023    _____Alan F. Yatvin_____    38716
Attorney-at-Law *(Sign here if applicable)*    Attorney ID # *(if applicable)*

NOTE: A trial de novo will be a jury only if there has been compliance with F.R.C.P. 38.

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| JOHN CALDERAIO<br>c/o WEIR GREENBLATT PIERCE<br>1339 Chestnut Street, Suite 500<br>Philadelphia, PA 19107<br><br>Plaintiff,<br><br>v.<br><br>CENTRAL BUCKS SCHOOL DISTRICT<br>20 Weldon Drive, Doylestown, PA 18901<br><br>Defendant. | CIVIL ACTION NO. 2:23-cv-4218<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

1. Former Central Bucks School District ("CBSD" or "District") student, John Calderaio ("Mr. Calderaio" or "John") brings this action against the Central Bucks School District pursuant to 42 U.S.C. § 1983 and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, along with state tort claims of negligent supervision, transfer and retention, to redress permanent, life altering injuries he suffered as a result of the District's failure to protect him from sexual abuse by Central Bucks West High School Choir teacher and known child predator, Joseph Ohrt. Mr. Calderaio seeks damages to compensate him for the District's violations of his right as a child and student to be free from gender discrimination including sexual harassment, sexual assault, and a hostile educational environment. At the time the sexual assaults occurred, John Calderaio was a student attending Central Bucks West High School ("CB West"), a Bucks County, Pennsylvania public school. CB West Choir Director, Dr. Joseph Ohrt ("Ohrt"), groomed, sexually harassed, abused, and assaulted John throughout the entire time he attended high school, from fifteen to eighteen years old. The District knew that Ohrt had sexually abused its children,

5. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1343 and 1367. Additionally, federal jurisdiction exists due to the diverse citizenship of the Plaintiff, a citizen of Florida and Defendant, a citizen of Pennsylvania, and the amount in controversy in this in matter exceeds the sum or value of $150,000, exclusive of interest and costs.

6. Venue is properly laid in this district pursuant to 28 U.S.C. §1391(b) because Defendant resides in this district and the events giving rise to the claims occurred in this district.

## FACTUAL BACKGROUND

7. The District hired Ohrt in 1987 as an elementary school teacher.

8. As the Linden Elementary School choir teacher, Ohrt sexually molested 11-year-old student Richard Roe (an alias) during the 1991-1992 school year.

9. Ohrt removed Roe from his classroom and escorted him to the music room under the guise of piano lessons. Ohrt sat Roe on his lap at the piano and touched Roe's penis over his clothing. Ohrt then put his hands down Roe's pants and underwear and touched his penis as Roe struggled to get away.

10. Shortly thereafter, Roe's mother reported the incident to the principal orally and in writing, and to a Linden Elementary School guidance counselor.

11. Roe testified under oath about Ohrt's abuse during his June 12, 2023, sentencing hearing.

12. Although the District received complaints about Ohrt's sexual misconduct involving Roe, and it knew or should have known that he presented an ongoing danger to children, it failed to meaningfully and appropriately investigate the complaints and meted out no discipline. The District's failures enabled and emboldened Ohrt to continue to sexually abuse the District's children and discouraged victims, witnesses and others from reporting future misconduct.

including elementary and high school students, for at least three decades before permitting him to have access to John. The District permitted Ohrt to have unsupervised, sanctioned, and one-on-one, access to John in remote areas of the school despite having explicit and scary information that he presented a sexual danger to other students throughout his career. Despite this notice, and a policy which required the District to conduct an investigation, they did nothing to protect John, or to prevent his teacher from grooming, and repeatedly harassing and sexually abusing him. In 2023, Ohrt was convicted of the sexual crimes he committed against John and two other children. Ohrt was designated a convicted sex offender and sent to state prison.

## PARTIES

2. Plaintiff John Calderaio (currently 25 years old) is a citizen and resident of the State of Florida, whose address is being kept confidential for his safety and privacy. He can be contacted through the offices of his attorneys, as set forth below.

3. Defendant Central Bucks School District is a local government agency established and organized under the laws of the Commonwealth of Pennsylvania, and is a citizen of the Commonwealth of Pennsylvania for the purposes of jurisdiction. CBSD receives federal funding and financial assistance within the meaning of 20 U.S.C. § 1681(a) and is otherwise subject to Title IX. The Central Bucks School District's administrative office is located at 20 Welden Drive, Doylestown, PA 18901. The District operates Central Bucks West High School, a public school, which is located at 375 West Court Street, Doylestown, PA 18901.

## JURISDICTION & VENUE

4. This case arises under the Constitution and laws of the United States, specifically, Title IX of the Education Amendments of (Title IX), 20 U.S.C. §§ 1681 *et. seq.*, and 42 U.S.C. § 1983.

13. On information and belief, the District committed a criminal act by failing to report Ohrt's sexual crimes against Roe to the police or Children and Youth Services as it was required to do under 23 Pa. C. S. § 6311. *See Heinrich v. Conemaugh Valley Mem. Hosp.*, 648 A.2d 53, 57-58 (Pa. Super. 1994).

14. Instead of reporting the abuse and taking steps to neutralize the threat Ohrt presented to its student, the District "passed the trash" by transferring Ohrt from Linden Elementary to CB West High School before the 1992-1993 school year.

15. When Roe, the molested student, entered CB West High School, Ohrt repeatedly retaliated against him, including calling him a "rat".

16. In 1995, Ohrt molested 13-year-old male student Peter Poe (an alias) who had agreed to babysit for him at his home.

17. When Ohrt returned home from a night out he went into the basement alone with Poe, came up behind him, put his arms around him, put his hands down Poe's pants, touched his penis and kissed him.

18. On June 12, 2023, Bucks County Court of Common Pleas Judge Jeffrey L. Finley sentenced Ohrt to two and a half to five years of confinement and five years of probation for Indecent Assault, 18 Pa.C.S. § 3126 and Corruption of Minors, 18 Pa.C.S. § 6301, for molesting Poe and Roe.

19. Despite knowing that Ohrt was a dangerous man, the District provided him with exclusive use of an office in a remote part of CB West which he would use to isolate and sexually abuse John and other male students behind a closed door. This behavior was so routine, that students began to refer to his office as the "rape room".

20. In 2013, one of the students who observed Ohrt bringing boys into the "rape room" called Ohrt a "pedophile" and other names in class. Ohrt reported K.G. to CB West administrators who suspended her instead of investigating the serious charge she made against Ohrt.

21. Throughout her time at CB West, K.G complained about Ohrt to her CB West guidance counselor including telling her that Ohrt "liked boys" and was "in love" with two specific male students and referred to one of the male students as Ohrt's "butt buddy."

22. The guidance counselor told K.G. that complaints against Ohrt "go back years and years."

23. CB West music teacher Bridgett Szychulski was arrested on September 16, 2014, for sexually abusing a 14-year-old student in 2012 when she had been the band teacher at Lenape Middle School. According to the Department of Education, "the criminal charges stem from allegations that [Szychulski] engaged in sexual contact with [the] fourteen-year-old male student both on and off school grounds, including having oral sex and sexual intercourse with the student and sending the student sexually-explicit text messages."

24. The District moved Szychulski from Lenape Middle School to CB South High School prior to her arrest. In June of 2015, Szychulski was convicted, sentenced to prison, and designated as a sex offender. she pled guilty.

25. Like Ohrt, Ms. Szychulski carried out this sexual abuse both inside of her office and in a storage room near the band room – both of which were in remote locations within the school.

26. During a September 23, 2014, Central Bucks School Board Meeting, then Superintendent Dr. David Weitzel addressed the sexual misconduct charge filed against Ms. Szychulski, assuring "the School Board and families that the district will continue to review its

5

policies and current health and safety curriculum. The district will also continue to cooperate with the District Attorney's office and will monitor the outcome of the legal process."

27. Despite knowing that Szychulski used her private office in a remote location to abuse a student and knowing that Ohrt had a history of sexually abusing students, and that a student called him a pedophile, reported that he was sexually interested in boys, and used his "rape room" to isolate them, Central Bucks School Board did not meaningfully change its practices or provide additional oversight of Ohrt.

28. John met Ohrt in 2013 when he started at CB West in 10th grade as a 15-year-old.

29. John went to CB West because he was aware of its prestigious choir program run by Ohrt.

30. Ohrt repeatedly committed the crimes of Indecent Assault, 18 Pa.C.S. § 3126, and Institutional Sexual Assault, 18 Pa.C.S. § 3124.2, upon John while he was a CB West student, as described below.

31. John took choir and participated in extracurricular choir related programs which he had to try out for, during both semesters of his sophomore, junior, and senior years.

32. Ohrt was also John's music and independent study teacher, extracurricular activity advisor, and homeroom teacher – the District assigned choir students to Ohrt for homeroom so that he would have more time with them – ostensibly to practice.

33. In addition to his age, Ohrt selected John as an abuse target because of his vulnerabilities.

34. As part of the grooming process, Ohrt convinced John to share the most intimate details of his parents' struggles and disagreements, and the instability of his household and living situation.

35. Ohrt weaponized the information John shared to isolate him from his support network by methodically undermining his relationships with his father, brother, and friends, and by convincing John that Ohrt was the only adult who could be trusted and who would look out for John's welfare.

36. Ohrt had so thoroughly convinced John that he could be trusted and that he was a caring, protective father figure to him, that John wanted to emulate Ohrt by becoming a school choir director just like him.

37. Ohrt exploited this trust and fostered John's dependence by making false promises that he would make sure that CB West would make him their next Choir Director when he finished college.

38. Ohrt manipulated John so thoroughly that John enrolled in Temple University's Music Education program to pursue that career goal.

39. During John's junior year, his father, Anthony Calderaio ("Anthony"), noticed that his son was not acting like himself.

40. Anthony met with the high school administration to report his concern that Ohrt's relationship with his son was inappropriate and concerning.

41. Despite knowing of Ohrt's sexual misconduct history, the High School administration failed to conduct a meaningful investigation, if any at all, and never John about the relationship.

42. During John's junior year, Ohrt repeatedly gave him rides from the school in his car in violation of CBSD Policy, which states, "A staff member may not transport students in a personal vehicle except where specifically permitted."

7

43. Ohrt brought John in and out of his car which was parked in the faculty parking lot, which is used by other teachers and administrators who parked in the same area.

44. Ohrt provided John with other inducements, such as hall-passes and free concert tickets, permitting him to conduct the choir, buy and bring food for him.

45. Ohrt told John that he loved him and required that John to say it back to him.

46. Ohrt would take retaliatory actions designed to punish John when he attempted to resist Ohrt's attempts to isolate him for sexual access.

47. Ohrt repeatedly sexually abused John at CB West in the choir room, the men's dressing-room which was near the theater department, and in his office.

48. On one representative occasion during John's junior year, Ohrt came up from behind him started intimately hugging him and grinding his genitals into John's backside.

49. Ohrt repeatedly grabbed John's butt, patted his stomach, and intentionally touched John's penis over his clothing.

50. Ohrt sexually abused John on multiple occasions during his junior and senior years. The sexual assaults included touching John's genital areas over the clothes, grinding against him while erect, frequent intimate hugs, and kissing the back of his neck.

51. During his senior year, Ohrt forced John to spend all of his school time with him – and took steps to isolate him from, and prevent him from socializing with, his peer group.

52. Ohrt pulled John out of lunches and brought him to the remote choir area and forced John to eat with him.

53. John's peers shunned him for the way Ohrt treated him and made fun of him by saying he and Ohrt were a "couple" and that John was gay.

54. On multiple occasions, Ohrt positioned himself outside of the school's dressing room bathroom and listened to John as he used the bathroom.

55. Ohrt gave John hall-passes so that he could remove John from his other classes in order to have sexual access to him.

56. Ohrt arranged, with the administration's approval, for John to take an independent study class with him during his senior year so that he could have "sanctioned" one on one time with John.

57. Ohrt used the independent study as a pretext to increase his sexual access to John at a time and place he knew no other students or staff had a reason to be present.

58. During independent study, the first class of the day, John was alone with Ohrt, who would be very handsy and touchy – often in his office and dressing room, including touching John's genital areas over the clothes, grinding against him while erect, and frequent intimate hugs and kissing the back of his neck.

59. A few months before the end of John's senior year, while on a choir concert trip, he and Ohrt were in a changing room while John was undressing, Ohrt instructed John to go into another room where no one else was present.

60. Once there, Ohrt sat in a chair opposite John and moved his face to within inches of John's face and started rubbing John's thigh and telling him that he loved him and was proud of him all the while inching his hands toward John's penis, Ohrt's sexual misconduct was interrupted by someone entering the room.

61. In April 2016, an anonymous Childline Report was made against Ohrt for abusing students.

62. The District, in violation of its policies, failed to conduct an investigation into the allegations, never interviewed John or offered him support.

63. In 2016, Ohrt displayed a sexualized photograph of former CB West student, "JR", without his shirt on amongst other photographs of undressed young men in a barn studio next to his home, a location to which Ohrt would regularly invite John and other CB West students.

64. The District continued to employ Ohrt for several years after John graduated and during which time he continued to abuse other students, including J.M. in 2021.

65. A second Childline Report was levied against Ohrt in 2021, disclosing Ohrt's inappropriate relationship with John.

66. Central Bucks Regional Police Department Detective Sergeant Paul Kreuter brought John in for questioning and told him that they had received another sexual abuse complaint against Ohrt.

67. Detective Kreuter told John that they had recovered video of John surreptitiously taken by Ohrt the depicted him changing in and out of his clothes in a room he used and believed was private.

68. On June 12, 2023, Bucks County Court of Common Pleas Judge Jeffrey L. Finley sentenced Ohrt to three years of probation for Invasion of Privacy, 18 Pa.C.S. § 7107 and Tampering with Evidence, 18 Pa.C.S. § 4910, related to this violation of John's trust, the final betrayal following years of abuse.

69. As a direct and proximate result of the Defendant's actions and inactions, John Calderaio has suffered violations of his constitutional rights and rights protected under state and federal law.

70. As a direct and proximate result of the Defendant's actions and inaction, John Calderaio has suffered in the past, and will continue to suffer in the future, severe pain and suffering, both emotional and physical, including but not limited to, mental anguish, embarrassment, humiliation, and emotional and physical distress, depression, and anxiety, all to his great detriment and loss.

71. As a direct and proximate result of the Defendant's actions and inaction, John Calderaio has suffered in the past, and will continue to suffer in the future, discrimination, financial debt, loss of education and benefits, loss of educational opportunity, loss of employment opportunity and loss of professional advancement, all to his great detriment and loss.

## COUNT I

### PLAINTIFF v. CENTRAL BUCKS SCHOOL DISTRICT
### CIVIL RIGHTS VIOLATION UNDER 42 U.S.C. §1983

72. The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

73. Ohrt's sexual abuse, the grooming and sexual assaults, inappropriate sexual contact, groping and molesting, and the District's deliberate indifference to the danger he presented, violated the Plaintiff's Fourteenth Amendment right to bodily integrity.

74. The District's deliberate indifference included, but was not limited to:

   a) Refusing to investigate Ohrt's sexual misconduct or discipline him despite a complaint from a parent in during the 1991-92 school year that Ohrt had molested her 11-year-old son (Roe);

b) The District's transferring Ohrt to CB West despite the fact that it knew or should have known that he was a sexual predator and would place other students at risk of being sexually abused;

c) Failing to adequately supervise Ohrt's, including failing to police the remote area of the school which he occupied;

d) Failing to adequately supervise Ohrt's relationship with John Calderaio.

e) The District's failure to address allegations that Ohrt engaged in sexual misconduct with John;

f) Placing Ohrt in a position of trust and control with respect to John, including but not limited to sanctioning and independent study despite the knowledge that they had that he presented a danger to John and its other students.

g) Failing to timely investigate or take any proper disciplinary action against Ohrt, who the District knew, or should have known, posed a significant threat to John's health, safety and welfare;

h) Failing on multiple occasions to properly and timely investigate Ohrt's relationship with John;

i) Failing to follow proper policies and procedures to ensure identification, reporting and investigation of sexual abuse of students by teachers; and

j) Disregarding information and evidence that Ohrt had and was sexually abusing CBSD students, including John.

75. The District, through its highest-level decision makers, failed to investigate, discipline and protect vulnerable students, after receiving notification of the instances of improper,

inappropriate, and unprofessional contact between, or conduct by, Ohrt, as set forth in the preceding paragraphs.

76. At all material times, the District acted under color of state law and the District acted through its administrators, school board members and other agents, servants and employees.

77. The District's deliberate indifference and failure to follow its written policies, as set forth above, created a climate in which Ohrt could and did with impunity prey upon multiple students, including John, by sexually and emotionally abusing them.

78. The District's deliberate failure to discipline Ohrt and its deliberate decision to transfer him to cover up his sexual assault of Roe, enabled and emboldened Ohrt to abuse other District students, including John.

79. As a direct and proximate result of the aforesaid District customs, practices, and/or policies, John was deprived of his rights, privileges and immunities secured by the constitution or laws of the United States, specifically his liberty interest in personal bodily integrity and freedom from sexual assault and abuse guaranteed under the Fourteenth Amendment to the United States Constitution.

80. As a result of the District's violation of Mr. John's constitutional rights, he has suffered in the past, and will continue to suffer damages as aforesaid.

## COUNT II

### PLAINTIFF v. CENTRAL BUCKS SCHOOL DISTRICT
### VIOLATION OF TITLE IX, 20 U.S.C. § 1681

81. The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

82. The District, an educational institution that received federal funding, violated Title IX by denying John Calderaio access to his education on the basis of his sex, and as a result of gender discrimination.

83. Ohrt's sex-based harassment was so severe, pervasive, and objectively offensive that it deprived John of access to educational opportunities or benefits provided by the school.

84. The District created and/or subjected John to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), because:

   a) he was a member of a protected class;

   b) subjected to sexual harassment in the form of a sexual assault and sexual harassment by a teacher;

   c) subjected to harassment based on his sex; and

   d) subjected to a hostile educational environment created by the District's lack of policies and procedures and/or failure to properly investigate and/or address the sexual assaults and subsequent harassment.

85. The District and its officials had actual knowledge of Ohrt's sexual misconduct.

86. The District's failure to promptly and appropriately respond to the sexual misconduct resulted in John, on the basis of his sex, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in the District's education programs in violation of Title IX.

87. The District failed to take immediate, effective remedial steps to resolve the sexual harassment complaints and instead acted with deliberate indifference toward John.

88. Instead of following its own policy with respect to investigating allegations of sexual misconduct, the District refused to initiate an investigation, on multiple occasions, which its policies required it to undertake.

89. Based upon the foregoing violations of Title IX of the Education Amendments of 1972, 20 U.S.C.§1681, *et. seq.*, John has suffered in the past, and will continue to suffer in the future, damages as aforesaid.

## COUNT III

### PLAINTIFF v. CENTRAL BUCKS SCHOOL DISTRICT
### SUPPLEMENTAL STATE LAW TORTS
### NEGLIGENT RETENTION, TRANSFER AND/OR SUPERVISION

90. The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

91. The District acted negligently resulting in the injuries to John for which damages are sought based upon the following:

   a) failing to report the sexual assaults and/or abuse perpetrated by Ohrt to the proper child welfare and law enforcement authorities despite having reasonable suspicions and/or actual knowledge in violation of the laws of the Pennsylvania, including, *inter alia,* the Child Protective Services Law, 23 Pa.C.S. § 6311(a)(4), a crime;

   b) failing to take any action in stopping and/or preventing the sexual assaults and/or abuse perpetrated by Ohrt;

   c) failing to supervise and train Ohrt;

   d) failing to supervise and train persons who were responsible for supervising Ohrt;

e) ratifying and accepting the inappropriate actions of Ohrt;

f) failing to disseminate and enforce an appropriate policy against sexual harassment;

g) failing to train staff to protect against the risk of sexual assault and sexual harassment of students;

h) Failing to train staff in proper procedures and requirements for mandatory child abuse reporting in accordance with the Pennsylvania's Child Protective Services Law, 23 Pa.C.S. § 6311 *et seq.*;

i) failing to supervise John while he was a minor and student entrusted to Defendant's care and supervision, and while standing *in loco parentis* to John;

j) failing to supervise Ohrt when Defendant knew or should have known of that he presented a danger, in the form of sexual abuse and related harms, toward children;

k) failing to exercise due care in all circumstances;

l) failing to come to the aid or rescue of John after placing him in a perilous situation, when the District knew, or should have known, that John was being victimized by a predatory adult;

m) failing to warn John or otherwise make reasonably safe the property which Defendant possessed and/or controlled;

n) failing to take immediate and appropriate corrective actions to remedy the known harassment and sexual assault by Ohrt;

o) failing to adopt, enforce, and/or follow any polices or procedures for the protection and reasonable supervision of minors;

p) improperly investigating or not investigating allegations of sexual harassment and abuse;

q) violating CBSD's own assumed and voluntary duties undertaken by it for the protection of minors;

r) Ratifying the improper sexual acts of Ohrt and breaching the duties imposed by Restatement (Second) of Agency, § 219.

92. As a direct and proximate result of the negligence, willful misconduct, intentional and/or criminal conduct of Defendant, John Calderaio has and will continue to suffer damages as aforesaid.

## JURY DEMAND

93. Plaintiff demands a jury trial as to each count and claim.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, John Calderaio, asks the Court to enter judgment in his favor and against the Defendant and to award him the following relief:

(A) General and compensatory damages;

(B) Attorney fees and costs; and

(C) Such other relief as the Court deems just and equitable.

**LAW OFFICE OF ANDREW SHUBIN**

By: /s/ *Andrew Shubin*
Andrew Shubin
310 South Burrowes Street
State College, PA 16801
(814) 867 3115
shubin@shubinlaw.com

**WEIR GREENBLATT PIERCE LLP**

By: *Alan L. Yatvin*
Alan L. Yatvin
Noah Cohen
1339 Chestnut Street, Suite 500
Philadelphia, PA 19107
(215) 665-8181
ayatvin@wgpllp.com
ncohen@wgpllp.com